GOTHARD, Judge.
This consolidated case arises from the collision of two vehicles; from judgment against the two drivers and dismissing the Department of Transportation and Development, the drivers appeal.
The accident occurred on state highway number 628 in St. Charles Parish on June 18, 1977. Joseph Smith was driving a Buick sedan eastbound, while Jean Paul Roussel was driving a Chevrolet pickup truck westbound. The vehicles collided in a curve of the road, which had been rebuilt in 1974 to accommodate a levee set back. Joseph Smith and his two passengers filed suit timely against Roussel,[1] who with his wife, Linda Bossier Roussel, then sued Smith. A third suit was filed by the parents of Mrs. Roussel, Peter Bossier and Ethaline Bossier, for Mrs. Bossier’s injuries. The three sets of plaintiffs later amended to add as joint tortfeasor the Department of Transportation and Development, alleging negligence in posting a speed limit of 45 miles per hour on the highway leading to the curve. The department filed third party demands against all of the plaintiffs, alleging their negligence and seeking contribution in the event it should be cast in judgment.
Trial was held in December, 1988, the matter was taken under advisement and judgment was signed on January 23, 1989. The judgment is silent as to fault but found in favor of Linda Roussel and Ethaline Bossier and against Joseph Smith in the amounts of $8,000 and $1,000, respectively, and in favor of Cora Smith and Karen Sterling and against Jean Paul Roussel in the amounts of $1,632.90 and $500, respectively, all awards subject to interest from date of demand and costs. All other claims were dismissed. In his reasons for judgment the judge ruled that “both drivers were negligent and their negligence was the cause in fact of the accident.” He stated that the Department of Transportation and Development did not breach its duty and the curvature of the roadway was not the cause in fact of the accident.
The issues raised are: 1) whether the severity of the curve, the posted speed limit of 45 miles per hour, the lack of a curve warning sign, and the lack of a 35 miles per hour advisory speed sign contributed to the accident; 2) whether Jean Paul Roussel and Joseph Smith were negligent and if so, whether their negligence was the cause in fact of the accident; and 3) whether the award of $1,000 for Ethaline Bossier’s injuries was adequate.

Liability of DOTD

All witnesses except Joseph Smith agreed that the Smith car had crossed the center line and that the collision occurred in Roussel’s (westbound) lane. It was also conceded by experts for both sides that the curvature of the road when rebuilt failed to meet the standards appropriate to highway 628, a rural highway with daily traffic of more than 700 vehicles and a posted speed limit of 45 miles per hour, i.e. a Class Five highway. In order to fit the curve within the existing right-of-way, DOTD had built it in conformity with the less stringent standards of a Class Six highway with traffic of 400 vehicles and posted speed of 40 miles per hour. The resulting curvature measured 12°23' rather than 8°30', the specified limit of Class Five roads. There were no warning signs indicating a curve nor signs with advisory lower speed limits.
Roussel argues on appeal that DOTD, in designing and constructing the stretch of roadway and failing to provide warning *778 signs, created an unreasonably dangerous curve and is liable under LSA-C.C. art. 2317 as well as article 2315. In order for a plaintiff to recover from DOTD he must show that the road was in DOTD’s care or custody, that it had a vice or defect that caused an unreasonable risk of injury, and that the injury was caused by the vice or defect. Holt v. Singletary, 441 So.2d 330 (La.App. 5th Cir.1983), and cases cited therein.
At trial it was established that it had been raining just before the wreck but had stopped and the pavement was wet. Smith estimated his speed at 40 to 45 miles per hour and stated that he slowed down when he saw Roussel approaching. Roussel testified that he was traveling about 30 miles per hour, slowed to 25, and pulled over so that his two right wheels were off the pavement. The appellants’ expert witnesses, Willis Taylor, an expert in highway design and Dwayne Evans, an expert in accident reconstruction and highway design, each testified for the Roussel plaintiffs that the curve was safe at a speed of 35 miles per hour. Evans stated that in his opinion the accident occurred . because Smith’s speed (below the posted level of 45) was too high for the curve on the wet road; because of the severity of the curve, centrifugal force pushed him across the center line.
Boyd Gautreaux, an expert in traffic engineering and particularly in signing, testified for DOTD that the advisory speed of 35 miles per hour is a conservative limit, and the curve can be navigated at a speed 5 to 10 miles an hour over it. He drove the curve at 40 miles an hour while doing the ball bank test but thought it unlikely the curve could be safely driven at 45 miles an hour. It was his feeling that advance warning signs were intended for and useful to drivers who were unfamiliar with an area, not those who traveled it routinely.
Olin Dart, an expert in accident reconstruction and road design, testified by deposition for DOTD. He stated that if the drivers were going no more than 35 to 40 miles per hour, they were in the safe range on that curve that day. He opined that the road might be safe between 40 and 45 miles per hour, depending on the degree of wetness and the “side friction value” of the pavement. The appellant points out that, on cross examination, Dr. Dart agreed that with a flatter curve the relative positions of the vehicles would have been different and there probably would have been no collision; however, his opinion is speculative because of the uncertainty as to the actual speeds of the vehicles.
Agreeing that hazards were created by sharpness of the curve and the absence of warning signs, we consider the question of whether the vice or defect was a cause of the accident.
The driver who leaves his own lane and collides with a vehicle in its own lane of traffic is held to a high burden of proof. He must prove by clear and convincing evidence that his presence in the wrong lane was due to circumstances over which he had no control and that his conduct did not contribute to the accident. Brannon v. Shelter Mut. Ins. Co., 507 So.2d 194 (La.1987). Rizley v. Cutrer, 232 La. 655, 95 So.2d 139 (1957).
Smith’s allegation that Roussel crossed into his lane was refuted by the evidence presented at trial. Smith testified that he had lived about a half mile from the curve most of his adult life and admitted he had driven through it safely in both directions every day both before and after the curve was rebuilt. In this case, a warning sign or a sign advising a reduced speed limit would not have changed the way in which he drove through the curve. He knew or had reason to know that on a wet pavement he needed to drive at a lower speed than usual and exert greater care. Although we cannot know precisely the reason for Smith’s crossing the center line, we can conclude that the accident was caused by some error in his driving. Accordingly, we affirm the judgment insofar as it dismisses the claims against DOTD.
*779 Contributory Negligence[2]
To find a plaintiff contributorily negligent, a court must find that he was negligent and his negligence was a legal cause of his damage. Despot v. Stromatt, 488 So.2d 1104 (La.App. 2nd Cir.1986). Counsel for Roussel argues that neither driver was negligent, while counsel for Smith avers that Roussel was contributorily negligent in crossing into Smith’s lane of traffic.
In his reasons for judgment the trial judge stated his determination of fault as follows:
Needless to say, Smith and Roussel have testimony which is contradictory. I find that both are negligent or that one is negligent and the other contributorily negligent, or vice versa.
While there is testimony to believe that Smith crossed the center line into ongoing traffic, there is evidence to suggest that Roussel was not paying attention and was distracted by his passengers and the radio causing him either to veer into Smith or not see him in order to take evasive action.
Our review of the transcript has revealed no evidence to indicate that Rous-sel was inattentive and distracted. The deposition of June 9,1978 contains only one question regarding the radio:
Q ... Was the radio on? I’m just curious.
A. I don’t know.
At trial, Mr. Roussel was questioned about possible distraction, as follows:
Q. Mr. Roussel, as you were traveling toward New Orleans, can you tell us what you were doing? Were you watching the road, watching your wife? What were you doing?
A. I was watching the road.
Q. Okay, Do you know what your wife was doing?
A. She was just sitting down talking with her mother.
Q. Was she doing anything else besides talking?
A. That was it.
Linda Roussel testified that she was counting Top Value stamps, as the family was en route to the Metairie store to redeem them. No other testimony relative to activity in the truck was elicited.
Bearing in mind the standard of appellate review of facts as recently set out in Rosell v. ESCO, 549 So.2d 840 (La.1989), we hold that the trial court’s determination of contributory negligence on the part of Roussel is clearly wrong. We reverse the judgment as to that finding, and it follows that Jean Paul Roussel cannot be cast for the damages of Cora Smith and Karen Ann Sterling, nor is he barred from recovery against the defendant, Joseph Smith.

Damages

Jean Paul Roussel underwent surgery and was hospitalized for six days for a crushed knee cap. The treating surgeon testified by deposition that, although Rous-sel had a good recovery of motion and strength in his leg, he had a 15% permanent impairment of the extremity. The appellate court is empowered to award damages when the record is complete, but in this case we find there is insufficient documentation of the hospital charges for us to make an accurate award. Accordingly, we remand for the limited purpose of fixing damages.
Linda Roussel seeks an increase in her damage award of $8,000. As no statement of her Ochsner charges was submitted, we assume the award was for general damages. She incurred a cut over the left eye which allegedly left a scar, multiple bruises, a concussion, and a comminut-ed fracture of the leg. She had surgery, remained in Ochsner Hospital for seventeen days, wore a cast for five months, and used crutches for six months. Her surgeon testified by deposition that when he discharged her on March 9,1978, she exhibited no limp and the X-rays indicated the break was well healed, with good alignment. He found no impairment of the leg. Her concussion had resolved without specific treatment before she was discharged *780 from the hospital. Mrs. Roussel testified that she had last had pain when the weather was cool, possibly a year before trial. An appellate court may disturb a damage award only when it is so low as to constitute an abuse of the trial judge’s much discretion, and we see no reason to do so in this case.
Finally, we consider Peter Bossier’s claim for Mrs. Ethaline Bossier’s injuries, for which he seeks an increased award. She received injuries to her face and left leg, which she stated still hurt at times. She left the hospital the night of the accident and has sought no medical advice since that time. We find no error in the court’s award of $1,000 for her injuries.
For the reasons assigned above, the judgment appealed from is reversed insofar as it finds negligence on the part of Jean Paul Roussel, finds in favor of Mrs. Cora Smith and Karen Ann Sterling and against Jean Paul Roussel, bars the recovery of Jean Paul Roussel for his injuries, and casts Jean Paul Roussel for half the court costs; in all other respects the judgment is affirmed. The ease is remanded to the lower court for the limited purpose of fixing damages for Jean Paul Roussel’s injuries.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED TO FIX DAMAGES.

. A second defendant, Tri-State General Agency, Inc., was dismissed on summary judgment before trial.

. The accident in this case took place prior to the amendment of LSA-C.C. art. 2323 to provide for comparative fault; contributory negligence at that time constituted a bar to recovery.