641 So.2d 1011 (1994)
Lawrence CALDWELL and Lynette D. Caldwell, Plaintiffs-Appellants,
v.
Sharon A. SMITH, et al., Defendants-Appellees.
No. 25956-CA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 1994.
*1012 Matheny and Pierson by Allen B. Pierson, Jr., Ponchatoula, for appellants.
Hayes, Harkey, Smith, Cascio & Mullens by Thomas M. Hayes, III, Monroe, for appellees.
Before NORRIS, LINDSAY and BROWN, JJ.
LINDSAY, Judge.
This case arises from an auto accident in Monroe, Louisiana. The plaintiffs, Larry and Lynette Caldwell, appeal from a jury award of damages which they contend is inadequate in several respects. The defendants answered the appeal, claiming that the jury erred in awarding damages for future medical expenses. For the reasons assigned below, we amend the trial court judgment to increase the damages awarded to the plaintiffs. As amended, the trial court judgment is affirmed.

FACTS
On August 7, 1990, Mrs. Caldwell was involved in an auto accident (hereinafter referred to as "the first accident"). Another car traveling in the opposite direction almost hit her vehicle head on, instead, sideswiping the left side of her car. As the driver of her vehicle, Mrs. Caldwell was wearing a seat belt harness that went from her left shoulder across her body and attached near her right hip. Immediately after the collision, Mrs. Caldwell was able to exit her car, which came to rest in a ditch. Her husband took her from the accident scene to the office of their family physician, Dr. Stephen Waldo. Dr. Waldo determined that Mrs. Caldwell was suffering from a cervical sprain or whiplash.
On September 20, 1990, Mrs. Caldwell and her husband were involved in another accident, which is the basis of the present suit (and which will be referred to as "the second accident"). The Caldwells, residents of Ponchatoula, Louisiana, were on a vacation/business trip. They had stopped in Monroe to visit Mrs. Caldwell's sister, en route to Eureka Springs, Arkansas, and Branson, Missouri, before proceeding on to their ultimate destination, a business convention in Kansas City. They were traveling north on U.S. Highway 165 in Ouachita Parish when their vehicle was struck by a car driven by Sharon A. Smith. Mr. Caldwell was driving; and Mrs. Caldwell was seated in the front passenger seat, wearing a seat belt harness which crossed from her right shoulder to her left hip. (It was stipulated at trial that Ms.
*1013 Smith was negligent in causing the accident and that Mr. Caldwell was free from fault.)
The force of the collision with the Smith car caused luggage in the back seat of the Caldwell car to come forward and strike Mrs. Caldwell on the left shoulder. Fortuitously, the second accident occurred in front of a hospital, and Mrs. Caldwell was quickly transported to the emergency room. Several hours later, she was released to bedrest and medication, including a narcotic painkiller. Although Mrs. Caldwell suffered no broken bones or bruised internal organs, her chest was severely bruised from her shoulder down, and she was in considerable pain.
After returning home, Mrs. Caldwell was treated by Dr. Waldo, who initially diagnosed her condition as a cervical strain and spasm with sternal bruising. Due to numbness, he felt that she also had some nerve stretching in the left hand. Eventually some of Mrs. Caldwell's pain began to subside; then the pain began to localize in the area of her left shoulder. In December 1990, Mrs. Caldwell first complained to Dr. Waldo of pain, "popping", and basic instability in her left sternoclavicular joint.
Ultimately, Dr. Waldo referred Mrs. Caldwell to Dr. John Clark, a physiatrist in Baton Rouge specializing in rehabilitation, who assumed her primary care from June 1991 to June 1992. He diagnosed Mrs. Caldwell as suffering from a left sternoclavicular joint instability, as well as left brachial plexus stretch injury. Dr. Clark sent her to a pain clinic which helped her learn her physical restrictions and cope with her pain and frustration.
Mrs. Caldwell was also referred to two orthopedic surgeons, Dr. Hontas and Dr. Allan Johnson of Baton Rouge. Apparently neither of them recommended surgery to pin the sternoclavicular joint.[1]
The Caldwells filed suit against Ms. Smith and her insurer, American Casualty Company of Reading, Pennsylvania, Inc., a member of the CNA Insurance Companies. The parties stipulated Ms. Smith's fault in the accident. Following a jury trial, the following damages were awarded in favor of the plaintiffs:

Mrs. Caldwell's pain and suffering $20,000
Mrs. Caldwell's past medical expenses $15,000[2]
Mrs. Caldwell's future medical expenses $10,000
Mr. Caldwell's loss of consortium $650
Mr. Caldwell's personal injury -0-
Mr. Caldwell's non-medical expense $960

The plaintiffs appeal. They assign the following as error: (1) the jury erred in awarding inadequate general damages in favor of Mrs. Caldwell; (2) the jury award of $10,000 for future medical expenses was inadequate; (3) the jury erred in refusing to award damages to Mr. Caldwell for his alleged personal injuries; and (4) the jury erred in awarding Mr. Caldwell only $650 for loss of consortium. The plaintiffs also contended that the trial court erred in finding that the amount of damages awarded to Mrs. Caldwell as a result of the first accident was irrelevant and then allowing her to be extensively cross-examined about her testimony in that trial. However, due to the relief granted to Mrs. Caldwell on the issue of general damages, we find it unnecessary to address this assignment of error.
The defendants answered the appeal, contending that the jury erred in awarding any damages for future medical expenses.

GENERAL DAMAGES FOR MRS. CALDWELL
The plaintiffs contend that the jury award for Mrs. Caldwell's general damages was inadequate. *1014 In support of their argument, they assert that at the time of the present accident she was essentially recovered from the cervical strain or whiplash sustained in the first accident and that her more serious injuries resulted from the second, present accident. To the contrary, the defendants maintain that Mrs. Caldwell sustained most of her injuries in the first accident which occurred six weeks before the accident with Ms. Smith.

Law
General damages are those which may not be fixed with pecuniary exactitude. They instead involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitively measured in monetary terms. Keeth v. Department of Public Safety & Transportation, 618 So.2d 1154 (La.App. 2nd Cir.1993), appeal dismissed, 619 So.2d 563 (La.1993).
In appellate review of general damages, the initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Only after an articulated analysis of the record discloses an abuse of discretion may the appellate court determine that the award is either excessive or insufficient. Reck v. Stevens, 373 So.2d 498 (La.1979).
In testing whether the trial court abused its discretion by making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Keeth, supra. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Youn, supra.
After finding that the lower court abused its discretion, the appellate court may raise (or lower) an award of damages to the lowest (or highest) point which is reasonably within the discretion afforded that court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).

Discussion
Dr. Waldo, Mrs. Caldwell's family doctor and one of her treating physicians, testified that he treated her after both accidents. He testified that the shoulder injury was separate and distinct from the injuries she sustained in the first accident. In his opinion, the sternoclavicular joint injury was sustained in the second accident. He also testified that he believed the reason the joint injury was not detected until several months after the second accident was because she was unable to move about very much due to the amount of pain she was suffering. As the pain decreased and she increased her activities, the sternoclavicular joint began to sublux, or become partially dislocated.
Dr. Clark, who assumed the role of Mrs. Caldwell's treating physician for about one year, testified that she had a chronic left sternoclavicular joint instability problem, as well as a left brachial plexus stretch injury. Based upon the history supplied by the patient and Dr. Waldo's medical records evaluating her recovery from the first accident, Dr. Clark concluded that the joint instability was caused by the second accident.
The defense's expert, Dr. Joe Morgan, testified that he examined Mrs. Caldwell in March 1993. His interview and examination lasted for a total of 30 minutes. He testified that he disagreed with Dr. Clark's diagnosis of left brachial plexus stretch injury secondary to the car accidents. He further testified that he reserved judgment on the diagnosis of left sternoclavicular joint instability until he could see the results of a CT scan, but he acknowledged that it was possible that she had that injury. He believed that she was in pain, but he could not ascertain the source. He diagnosed Mrs. Caldwell as suffering from a neck injury, but testified that this would not limit shoulder motion.
The jury obviously believed that Mrs. Caldwell sustained a serious injury in the second accident which will continue to cause her substantial difficulty in the future. (This *1015 is demonstrated by the substantial damages awarded by the jury for future medical expenses.) Dr. Waldo and Dr. Clark both testified that Mrs. Caldwell will continue to be limited in certain activities (particularly recreational ones) for the rest of her life. Although the jury found that Mrs. Caldwell suffered a serious injury in the second accident, nevertheless, the jury erred in awarding an inadequate amount of general damages for this injury.
Consequently, we raise Mrs. Caldwell's award for general damages to the lowest amount which could have reasonably been assessed, the sum of $35,000. See and compare Partner v. Anderson, 513 So.2d 471 (La.App. 2d Cir.1987), in which a general damages award of $45,000 was reduced to $30,000 for a plaintiff whose condition was less severe than that of Mrs. Caldwell.
The judgment will be amended accordingly.

FUTURE MEDICAL EXPENSES
The plaintiffs also contend that the jury awarded an inadequate amount for future medical expenses. The defendants argue that the jury erred in awarding Mrs. Caldwell any damages for future medical expenses.
An award for future medical expenses is not susceptible of calculation with mathematical certainty. However, like any other element of special damages, future medical expenses must be established with some degree of certainty, and a plaintiff must demonstrate that such expenditures more probably than not will be incurred. Coffin v. Board of Supervisors of Louisiana State University Agricultural and Mechanical College, 620 So.2d 1354 (La.App. 2d Cir. 1993).
Dr. Clark testified that in the future Mrs. Caldwell would require therapy and anti-inflammatory medication for periodic pain flare-ups resulting from her permanent condition. Dr. Waldo testified that Mrs. Caldwell already found it necessary to call him periodically for pain and anti-inflammatory medication. Both doctors also testified that it was medically probable that Mrs. Caldwell will develop painful degenerative arthritis in her left shoulder girdle as a result of her condition. We find that this testimony was sufficient to support the jury's award for future medical expenses.
These assignments of error are without merit.

GENERAL DAMAGES FOR MR. CALDWELL
As to Mr. Caldwell's claims, the plaintiffs maintain that the jury should have awarded him some amount of damages for his minor injuries, consisting of general back and neck soreness of about a week's duration. However, the defendants argue that, since Mr. Caldwell never saw a doctor after the accident, the jury could have reasonably determined that he sustained no injury. However, if some award is merited, the defendants suggest $350.
Mr. Caldwell's uncontradicted testimony established that he suffered aches and pains for two to five days following the accident. Within seven to ten days, he made a complete recovery. Therefore, we find that the jury erred in failing to make any award in his favor. We find that an award of $500 is justified. See Hawkins v. Gilfoil, 483 So.2d 1082 (La.App. 2d Cir.1986); Palmer v. Stokes, 444 So.2d 213 (La.App. 1st Cir.1983).
Accordingly, the judgment is amended to award Mr. Caldwell $500 in general damages.

LOSS OF CONSORTIUM
The plaintiffs also contend that Mr. Caldwell should have been awarded more than $650 for loss of consortium where Mrs. Caldwell's injuries required them to abstain from sexual activity for a period of four to six months. The defendants contend that no increase is warranted where the only evidence admitted in support of this award was Mrs. Caldwell's testimony of an interruption in their sexual relationship of four to six months.
A claim for loss of consortium is broken down into several components including loss of: (1) love and affection, (2) society and companionship, (3) sexual relations, (4) *1016 the right of performance of material services, (5) the right of support, (6) aid and assistance, and (7) loss of felicity. Proof of any of these elements is sufficient for an award for loss of consortium. Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985).
We find no error in the jury's award. The evidence was scant on this issue, and the jury could have reasonably concluded that only a nominal award was merited to compensate Mr. Caldwell for his minimal loss of consortium.
This assignment of error is without merit.

CONCLUSION
The judgment of the trial court is amended in part and, as amended, affirmed. Accordingly, the judgment is recast, in relevant part, as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in the amount of $35,000.00 for general damages in favor of plaintiff, LYNETTE D. CALDWELL, and against the defendants, SHARON A. SMITH and AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, INC., in solido, plus legal interest from date of judicial demand.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in the amount of $500.00 for general damages in favor of plaintiff, LAWRENCE CALDWELL, and against the defendants, SHARON A. SMITH and AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, INC., in solido, plus legal interest from date of judicial demand.
Costs are assessed against the defendants.
AMENDED, AND, AS AMENDED, AFFIRMED.
BROWN, J., concurs.
NOTES
[1] We observe that neither Dr. Hontas or Dr. Johnson was called as a witness at trial, although Dr., Hontas' medical records were admitted into evidence. In his notes of his physical examinations of Mrs. Caldwell, Dr. Hontas made several observations of tenderness over the left sternoclavicular joint. However, he also stated on two occasions that "I could not detect any definite `clicking' sensation today."
[2] Because the plaintiffs' insurer paid some medical expenses, the parties stipulated that Mrs. Caldwell was not entitled to the full amount of the medical expenses which were awarded by the jury. Consequently, the final judgment reflects an award of $11,638.28 for past medical expenses.