758 So.2d 373 (2000)
Victoria B. GEORGE, Plaintiff-Appellant,
v.
ALLSTATE INSURANCE COMPANY, et al., Defendants-Appellees.
No. 32,899-CA.
Court of Appeal of Louisiana, Second Circuit.
April 5, 2000.
*374 William E. Armstrong, Monroe, Counsel for Appellant.
Walter C. Dunn, Monroe, Counsel for Appellees.
Before STEWART, PEATROSS & DREW, JJ.
PEATROSS, J.
Plaintiff, Victoria B. George ("Ms. George"), appeals from a judgment of the trial court against Allstate Insurance Company ("Allstate") and Lealar M. Jones ("Mr.Jones") awarding her $5,605 in damages for injuries sustained by her and her six minor children in an automobile accident. The trial court denied her claim for penalties and attorney fees pursuant to La. R.S. 22:1220. Ms. George appeals both rulings, arguing that the amount of the award of general damages is abusively low and that the denial of her claim for penalties and attorney fees against Allstate was error. For the reasons stated herein, we affirm.

FACTS
Ms. George and her six minor children were involved in an automobile accident with Mr. Jones on June 6, 1997. Ms. George was traveling southbound on Kammell Street in Bastrop, Louisiana, when a truck, driven by Mr. Jones, turned left in front of her vehicle. Ms. George collided with the truck while traveling approximately 25 miles per hour, totaling her vehicle.
The parties stipulated to liability prior to the trial. The only issues at trial, therefore, were quantum and Ms. George's claim for penalties pursuant to La. R.S. 22:1220. Ms. George testified at trial regarding her own injuries and those of her six minor children.
Ms. George, who was not wearing a seatbelt, hit the steering wheel on impact with her chest. She also injured her back, shoulders and neck, cut her lip and dented or chipped the gold crown on her right front tooth. Ms. George sought treatment on the day of the accident at Morehouse General Hospital. She complained of an injured back, neck and shoulder. She was released from the hospital that same day and was advised to take extra-strength Tylenol and to contact her doctor on Monday if her pain had not resolved.
On June 9, 1997, Ms. George sought treatment from her family physician, Dr. Allen Spires, but was informed that she needed authorization from Allstate for the treatment. Allstate provided the authorization and Ms. George, as well as her children, were able to see Dr. Spires on June 10, 1997. On that date, Dr. Spires prescribed a muscle relaxer and Ibuprofen for Ms. George. He also recommended therapy, consisting of a sonolator, ultrasound and hot packs, which she received at his office on numerous occasions. Ms. George remained under Dr. Spires' care *375 for five weeks and was released on July 17, 1997, after her sixth visit.
Ms. George testified that she was not fully recovered when released by Dr. Spires. She placed her degree of recovery on the date of her release between 50 and 70 percent. Ms. George further testified that she was still experiencing residual problems at the time of trial and believed that she was only 83 to 90 percent recovered from the injuries she received in the accident. Ms. George testified that the injuries she suffered affected her ability to effectively run her household and deal with her five-month-old baby. She was also placed on anti-depressants to treat anxiety and depression she allegedly suffered as a result of the accident. Ms. George also testified that she continued to suffer from headaches related to the injuries she sustained in the accident.
Ms. George's six minor children were also transported to Morehouse General Hospital, via ambulance, and treated for injuries suffered as a result of the accident. Each child also saw Dr. Spires for follow-up treatment. Jessica George, ten years of age, complained of headaches and neck and lower back pain. She saw Dr. Spires on three occasions. Dr. Spires prescribed Motrin for Jessica on June 10, 1997. He refilled the prescription on June 18, 1997. Jessica was released from treatment on June 25, 1997. She was the first child to stop complaining about injuries.
Lee George, seven years of age, complained of neck and back pain. He was diagnosed by Dr. Spires as suffering from cervical strain and was prescribed Motrin. He was released from treatment on June 18, 1997, and was the second child to stop complaining about injuries.
Victoria George, Ms. George's five-year-old daughter, complained of injuries to her forehead, neck and leg. The record indicates that Victoria was seen by Dr. Spires on two occasions for a contusion to her leg. Dr. Spires prescribed analgesics for her injuries and released her from his care on June 18, 1997. Ms. George testified that Victoria was the third child to stop complaining about injuries.
Quan'niecia Bradshaw was five months old at the time of the accident. She was sitting in a sibling's lap at the time of the accident rather than in a car seat. According to Ms. George, Quan'niecia cried a lot and was very irritable during the two months following the accident. She was seen by Dr. Spires on two occasions. On June 10, 1997, a work-up was done that revealed no obvious injuries to the child. On June 12, 1997, Quan'niecia underwent an echocardiogram for a heart murmur which showed no apparent injuries related to the accident. Dr. Spires never prescribed any medication or treatment for Quan'niecia who was, according to Ms. George, the fourth child to recover from injuries.
Anna George, nine years of age, complained of stomach, neck and shoulder pain. Anna also saw Dr. Spires on June 10, 1997. On that date, Dr. Spires diagnosed cervical strain and prescribed Motrin for Anna. When she returned on June 18, 1997, Dr. Spires felt that her pain was resolving and released Anna from treatment at that time. Ms. George testified that Anna was not fully recovered from her injuries when released by Dr. Spires, but that the injuries were resolved before Anna started school in August 1997.
Finally, Emanuel Bradshaw, 11 years of age, sustained a hematoma to his nose from hitting the dashboard, a knot on his forehead and swollen eyes. He also complained of memory loss. Emanuel saw Dr. Spires on seven different occasions. His first visit was June 10, 1997, at which time Dr. Spires prescribed Motrin. When Emanuel returned on June 18, 1997, he still had the hematoma which was slightly tender. Dr. Spires prescribed warm compresses and Tylenol for the pain. Emanuel returned the following day complaining of a headache. Dr. Spires repeated his instructions of June 18, 1997.
*376 When Emanuel returned on June 25, 1997, Dr. Spires noted that the hematoma was smaller. Again, on July 2, 1997, Dr. Spires noted that the hematoma was smaller and was continuing to resolve. On July 9, 1997, Dr. Spires noted that the hematoma was even smaller and was now non-tender. Dr. Spires released Emanuel on July 17, 1997. At that time, the hematoma was about the size of a BB and was not tender. Ms. George testified that Emanuel was the last of the children to stop complaining about injuries.
The last date that Ms. George or any of the children were treated by Dr. Spires was July 17, 1997. On August 20, 1997, Ms. George, with the help of her mother, Reola Williams ("Ms.Williams"), contacted Allstate adjuster Paula Aultman ("Ms.Aultman").[1] Ms. George testified that Ms. Aultman offered to settle the case for $4,700. It was the understanding of Ms. George and Ms. Williams, who was listening in on the call, that Ms. Aultman offered Ms. George and her children a total of only $4,700 because that was all that was left of the insurance policy's $10,000 limit and, therefore, was all of the money that Allstate could offer to Ms. George. She rejected the offer. It is undisputed that the actual policy limit was $20,000. Arguing that Ms. Aultman's offer was an attempt to mislead her as to the policy limit and procure an unreasonably low settlement of the claim, Ms. George raised a claim for penalties under La. R.S. 22:1220.
Ms. Aultman testified that she made an offer of $4,700 plus all medical expenses to Ms. George on August 20, 1997. Ms. Aultman further testified that, at the time of this offer, she had been employed as a claims adjuster with Allstate for one and one-half years. Ms. Aultman was trained by Allstate regarding making representations to clients about policy limits. She testified that she handled over 60 claims per month; and, while she did not recall this particular conversation with Ms. George, she stated that it would be inappropriate to disclose the policy limit to a claimant in most cases. Finally, she testified that she had no recollection of ever intentionally misleading any claimant about the available coverage under any policy. According to Ms. Aultman, she definitely would not have intentionally misled Ms. George because such misbehavior would have jeopardized her job.
Following a bench trial held on December 7, 1998, the trial court awarded general damages in the following amounts: Victoria George (mother), $2,000; Emmanuel Bradshaw, $1,350; Jessica George, $550; Anna George, $435; Lee George, $435; Victoria George (daughter), $435; and Quan'niecia Bradshaw, $400. The trial court also awarded Ms. George the amount of medical expenses for her and her six children. As previously stated, Ms. George's claim for penalties and attorney fees against Allstate was denied.

DISCUSSION

Claim for Penalties Pursuant to La. R.S. 22:1220
La. R.S. 22:1220 regulates penalties against insurers and provides in pertinent part:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.

*377 * * *
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
It is well settled that a court of appeal may not set aside a trial court's or jury's factual finding in the absence of manifest error or clear wrongness. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there is conflict in the testimony, reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel its own evaluations and inferences are equally reasonable. Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993); Harrison v. Gore, 27,254 (La. App.2d Cir.8/23/95), 660 So.2d 563, writ denied, 95-2347 (La.12/8/95), 664 So.2d 426; Gardner v. McDonald, 27,303 (La. App.2d Cir.8/23/95), 660 So.2d 107, writ denied, 95-2349 (La.12/15/95), 664 So.2d 453. Likewise, reasonable evaluations of credibility should not be disturbed on review. Marshall v. Caddo Parish School Board, 32,373 (La.App.2d Cir.10/29/99), 743 So.2d 943. It is the factfinder's duty to weigh credibility and accept or reject all or part of a witness' testimony. Id. Furthermore, when findings of fact are based on determinations of credibility of witnesses, the manifest error-clearly wrong standard mandates great deference to the determinations made by the trial court. West v. Williams, 30,842 (La.App.2d Cir.8/19/98), 717 So.2d 1224. If the trial court's findings are reasonable when the record is reviewed in its entirety, the appellate court may not reverse them. Fowler v. Wal-Mart Stores, Inc., 30,843 (La.App.2d Cir.8/19/98), 716 So.2d 511.
The trial court made a determination of credibility after hearing the testimony of Ms. George, Ms. Williams and Ms. Aultman. In its reasons for judgment, the trial court stated:
Ms. Aultman testified in court as to how the case was assigned to her and the actions she took. The evidence reveals that there is no dispute as to the payment of property damage claims and that the adjuster immediately contacted Dr. Spires and authorized payment for the services. Thereafter, she conversed with plaintiff concerning the matter. The court finds that Ms. Aultman handled her duties in a professional manner and rendered credible testimony.
* * *
In viewing the claim of plaintiff in this case with these particular facts and circumstances the Court finds that defendant Allstate and its representatives acted completely within statutory guidelines and did absolutely no wrong doing. This claim for penalties and attorneys fees has no merit whatsoever and is rejected in its entirety.
Having heard Ms. Aultman's testimony as described earlier in this opinion and having had the opportunity to observe her testify, the trial court concluded that Ms. Aultman's testimony was credible, thereby denying the La. R.S. 22:1220 claim. Specifically, the trial court found that "the defendant Allstate and its representatives were reasonable in their actions, made good faith gestures and offers and at no time attempted to mislead plaintiff and her children in any manner." We find that the trial court's conclusion was a reasonable one; and, therefore, we find that this assignment is without merit.[2]

Quantum
The trial court awarded Ms. George and her children a total of $5,605 in general damages. Ms. George contends that this *378 award is abusively low in light of the injuries sustained by her and her children and should be increased by this court. We disagree.
General damages involve mental or physical pain and suffering, inconvenience, loss of intellectual or physical enjoyment or other losses of lifestyle which cannot be measured exactly in monetary terms. Sallis v. City of Bossier City, 28,483 (La.App.2d Cir.9/25/96), 680 So.2d 1333, writs denied, 96-2592, 96-2599 (La.12/13/96), 692 So.2d 376, 1063. The trial court has much discretion in the assessment of damages in tort cases. La. C.C. art. 2324.1. The discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
We will address the injuries and awards of Ms. George and each child in turn. First, as previously stated, Ms. George was diagnosed with cervical and lumbar strain. She was treated by Dr. Spires for five weeks; and, when she was released from treatment on July 17, 1997, Dr. Spires testified that she stated that she had no more pain and no problems. Ms. George has sought no additional medical treatment for her injuries, though she still complained of pain at trial. The trial court awarded her $2,000 in general damages. We find no error in this award.[3]
Jessica George was diagnosed with minor neck and back injuries. She was treated by Dr. Spires on three occasions, did not seek further medical treatment for these injuries after her release by Dr. Spires and did not complain of pain at the time of trial. The trial court awarded her $550 in general damages. We find no error in this award.
Anna George, Lee George and Victoria George (daughter) were all diagnosed with cervical strain. Each child was treated by Dr. Spires for one week and was released from treatment after the second *379 visit. None have sought additional medical treatment for accident-related injuries since the date of their release and none complained of pain at the time of trial. Each was awarded $435 in general damages. We find no error in the awards for Anna's, Lee's and Victoria's injuries.[4]
Quan'niecia Bradshaw was five months old at the time of the accident. She cried frequently after the accident, but Dr. Spires was unable to find any objective injury to Quan'niecia. The trial court awarded her $400 in general damages; and, while this may be high for a person who did not suffer any objective injury, we do not find that the award was made in error.
Finally, Emmanuel Bradshaw hit his face on the dashboard which resulted in a hematoma, roughly the size of a marble, and headaches. He was treated by Dr. Spires on five occasions and was released on his sixth visit. No further treatment was sought for Emmanuel after his release by Dr. Spires and he did not complain of pain at the time of trial. The trial court awarded Emmanuel $1,350 for his injuries. We do not find that this award was made in error.[5] Thus, this assignment is without merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed to Appellant, Victoria B. George.
AFFIRMED.
NOTES
[1] Ms. George used her mother's telephone to make the call to Ms. Aultman because her mother had a broad calling range capability on her telephone.
[2] Even assuming, arguendo, that Ms. Aultman breached a duty to Ms. George in misstating the policy limit, we fail to see how Ms. George was damaged by such breach. La. R.S. 22:1220(A) allows liability on the part of an insurer who breaches the duty set forth in the provision "for damages sustained as a result of the breach." In fact, the amount of an award of penalties under subsection (C) of the statute is to be determined, in part, by the amount of damages sustained as a result of the breach. Both Ms. George and Ms. Williams testified that Ms. George rejected the offer made by Ms. Aultman because it was too low. They further testified that such rejection was made on the day the offer was tendered by Ms. Aultman to Ms. George. Ms. George then sought the services of Mr. Armstrong to represent them, which resulted in the filing of a petition for damages sustained in the accident. Several months after filing the original petition, Ms. George filed an amended and supplemental petition seeking penalties and attorney fees under La. R.S. 22:1220. It was Ms. George's rejection of Allstate's offer that ultimately resulted in the case proceeding to trial where Ms. George's and her children's damages were decided by the trial court. We are confident in concluding that, even if Ms. Aultman had disclosed the correct policy limit of $20,000 or had not in any way misled Ms. George as to what the limit was, Ms. George would have still rejected the offer of $4,700 as "too low" and the case would have proceeded to trial as it did. Since we can find no damage sustained by Ms. George by virtue of the alleged breach of duty by Ms. Aultman, there could be no recovery under La. R.S. 22:1220.
[3] Compare Aaron v. Bolds, 566 So.2d 195 (La.App. 2d Cir.1990) (plaintiff was diagnosed with cervical strain and treated for six weeksawarded $250 in general damages); Brimer v. Copeland, 604 So.2d 1388 (La.App. 2d Cir.1992) (plaintiff underwent treatment for six months, but missed only two days of workawarded $1,000 in general damages); Day v. Silver Oak Cas. Ins. Co., 28,566 (La. App. 2 Cir. 8/21/96), 679 So.2d 486 (plaintiff treated for cervical and lumber problems for nine monthsawarded $3,500 in general damages).
[4] See cases cited in footnote 1, supra. See also Caldwell v. Smith, 25,956 (La.App.2d Cir.8/17/94), 641 So.2d 1011 (plaintiff suffered aches and pains following an accident for two to five days and made a complete recovery within ten daysawarded $500 in general damages).
[5] Compare Smith v. Roussel, 554 So.2d 776 (La.App. 5th Cir.1989), writ denied, 559 So.2d 141 (La.1990) (plaintiff sustained injuries to her face, forehead and left leg and was still complaining of pain at trialawarded $1,000 in general damages); Lewis v. State, DOTD, 25,961 (La.App.2d Cir.8/17/94), 642 So.2d 260, reversed on other grounds, 94-2370 (La.4/21/95), 654 So.2d 311 (plaintiff, an eight-month-old, received cuts in her forehead as a result of an automobile injury; the award was also made for trauma resulting from separation from her mother while the mother was in the hospital, as well as for fear of riding in cars as a result of this accident awarded $2,500 in general damages).