573 So.2d 1255 (1991)
Kim E. FRIEDMANN
v.
Thomas P. LANDA, Individually and as Natural Tutor of his Minor Child, Jaquelyn Landa, State Farm Insurance Company, and Travelers Insurance Company.
No. 90-CA-0215.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 1991.
*1256 Ford T. Hardy, Jr., New Orleans, for plaintiff.
Sheryl Story, Law Offices of James J. Morse, New Orleans, for appellees.
Before BYRNES, LOBRANO and WILLIAMS, JJ.
WILLIAMS, Judge.
This appeal arises out of an automobile accident in which plaintiff, Kim Friedmann, sustained injuries. The court below rendered judgment in favor of plaintiff and against defendant, Travelers Insurance Company, the uninsured motorist carrier in *1257 this case. Plaintiff appeals, alleging that the trial court 1) abused its discretion in its award for pain and suffering; 2) abused its discretion in its award for lost wages and earning capacity; 3) erred in failing to award penalties and attorney fees; 4) and erred in failing to fix the amount of interest awarded at twelve percent per annum. We find that the record supports the awards for pain and suffering, and loss of earning capacity, and therefore, we hold that the trial court did not abuse its discretion in making these awards. However, because the record supports an award for lost wages greater than that awarded by the trial court, we amend that award. Further, we hold that the trial court did not err in failing to award penalties and attorney fees, since the record does not show that defendant arbitrarily and capriciously failed to tender the amount demanded. Finally, we find that the trial court did not err in failing to fix the award of interest at twelve percent. Accordingly, we amend the judgment insofar as the award of lost wages and affirm as amended.
On April 27, 1986, plaintiff was a passenger in a car driven by Gary Conzonire. The car was stopped at a red light at the intersection of the I-610 exit ramp and Canal Boulevard when it was hit from behind by a vehicle driven by Jacquelyn Landa. The Landa vehicle was insured by State Farm with bodily injury limits of $25,000/$50,000. The Conzonire vehicle was covered by Travelers, which provided uninsured/underinsured coverage of $100,000 as well as medical payment coverage of $5,000. Friedmann was injured and subsequently filed suit against Landa, State Farm and Travelers.
On April 13, 1987, plaintiff was involved in a second automobile accident in which she received additional injuries. Plaintiff is involved in separate litigation as to that accident, unrelated to the instant case.
In September, 1988 plaintiff executed a full and final settlement of her claims against Landa and State Farm in the amount of $24,500, which was $500 less than the policy limits. Also in September, 1988, Travelers unconditionally tendered to plaintiff $10,000 in UM payments. Additionally, Travelers paid $5,000 in medicals by April 11, 1989.
Prior to the trial against Travelers, the parties stipulated, inter alia, that 1) plaintiff's "TMJ" problems and the medical treatment by Drs. Mohammed, Buras and Atkinson are unrelated to the April 27, 1986 accident; 2) any judgment would be amended to reflect amounts already received by plaintiff from State Farm and Travelers; and 3) liability under the Travelers UM policy was admitted.
After a bench trial, judgment was entered in favor of plaintiff and against Travelers in the amount of $57,390.53 plus interest and costs "from date of judicial demand until paid." The award was itemized:

Pain suffering and disability $35,000.00
Medical $ 6,579.53
Future Medical $ 3,000.00
Lost income $12,811.00.

On June 19, 1989, the trial court rendered another judgment, in part to clarify interest on the original judgment. There, the court stated: "The judgment is to draw interest on the amount due, at legal interest until paid. That is on the whole amount from date of demand until part has been paid, then on the remainder, as long as unpaid."
Plaintiff filed this appeal, alleging insufficiency of the award made. For the reasons assigned, we amend the judgment of the trial court and affirm as amended.

Assignment of Error No. 1
First, plaintiff asserts that the trial court abused its discretion in its award for pain and suffering. We disagree.
It is a well established rule of law that before an appellate court can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its much discretion in making the award. Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976), rehear. den. In determining whether a particular award is inadequate or excessive, the reviewing court must look to the individual facts and circumstances of the case before it. Reck v. Stevens, 373 So.2d 498, 501 (La.1979). Our review of the facts and circumstances *1258 of this case convinces us that the trial court did not abuse its much discretion in the award for pain and suffering.
Dr. Essam Elmorshidy, orthopaedic surgeon, saw plaintiff for the first time on May 8, 1986. Plaintiff complained of neck and lower back pain. She suffered muscle spasms of the neck and shoulder and some tenderness. Her range of motion was limited in the neck but fair in the back. Dr. Elmorshidy diagnosed a strain of the cervical and lumbar spine, gave plaintiff muscle relaxants and analgesic cream and advised her to avoid strenuous activity.
By July, 1986 plaintiff's lower back pain ceased and her shoulder pain decreased. However, she testified that the muscle pain near or at her right shoulder blade increased. With the continuation of plaintiff's muscle spasms and tenderness, she was admitted to the hospital for more intensive conservative treatment July 10-16, 1986. She was placed in traction, and her pain improved. On the night of her discharge, plaintiff suffered an episode of severe pain, but this lasted one night. Plaintiff suffered pain with prolonged sitting, standing or walking.
Plaintiff saw Dr. Elmorshidy regularly in subsequent months. The record shows that, although plaintiff occasionally had flare-ups of neck and upper back pain, sometimes severe, she generally showed continued improvement with minimal spasms and tenderness. Dr. Elmorshidy testified that plaintiff did have a "trigger spot" (a localized tender area) in the scapular (shoulder blade) muscles. Plaintiff was given steroid injections in the area, to which she responded positively.
Plaintiff's visit to Dr. Elmorshidy on February 4, 1987 showed considerable improvement, with intermittent neck pain and referred pain to the shoulder. Plaintiff's visit on April 13, 1987 showed that she was doing "fair, apart from slight intermittent aches related to changes in weather."
On her way from the April 13, 1987 visit with Dr. Elmorshidy, plaintiff was involved in the second automobile accident. Her left face and shoulder were thrown against the window. Plaintiff saw Dr. Elmorshidy two days later, with complaints of pain in her neck, face and shoulder muscles. In May, June and July, plaintiff saw Dr. Elmorshidy five times, with complaints generally related to her neck and jaw. Her last visit with Dr. Elmorshidy on July 23, 1987 showed that she was improved, with less pain and some muscle spasms.
Dr. Elmorshidy testified that plaintiff's injury was soft tissue injury with no nerve damage.
Plaintiff saw Dr. Raul Diaz, an orthopaedic surgeon and Dr. Elmorshidy's associate, between October, 1987 and 1989. Dr. Diaz's findings were generally limited to the neck and upper thoracic region. Dr. Diaz testified that plaintiff's pain "will quiet down with time" and stated that surgery is not indicated. Dr. Diaz also testified that he advised plaintiff to use her arms, even to the point of slight discomfort, to aid her recovery.
In March, 1987 plaintiff saw Dr. A.N. Diodene, Jr., an orthopaedic surgeon, on referral from State Farm. On full rotation of the right shoulder, plaintiff complained of pain at the vertebral border of the right scapular. Plaintiff again saw Dr. Diodene in November, 1988, at which time there were no apparent spasms and she had full range of motion of the cervical spine region.
The medical evidence shows that plaintiff has a 25% compression of her vertebra at T-8. However, the record supports the trial court's finding that this problem is unrelated to the accident of April, 1986. Drs. Elmorshidy and Diodene both testified that plaintiff's problem at T-8 resembles a "Schmorl's node," which is not trauma induced. While the medical testimony confirms that the accident could have caused an asymptomatic condition at this vertebral level to become symptomatic, the testimony also indicates that a problem at T-8 would generally cause localized pain on that spotnot experienced by plaintiffand further, that T-8 supplies nerve roots to the mid-back and lower, not to the scapular region where plaintiff complains of pain. Thus, we cannot say that the trial court *1259 erred in finding no relationship between T-8 and the accident.
Moreover, all three of the expert medical witnesses testified that plaintiff's problems after April 13, 1987 were a result of both accidents combined. The record also supports the trial court's finding that neck discomfort which plaintiff suffered at the time of trial will resolve.
Considering the facts and circumstances of this case, we cannot say that the trial court abused its much discretion in awarding plaintiff $35,000 for her pain and suffering resulting from the strain and soft tissue injury. Plaintiff's pain is intermittent and will resolve in time.

Assignment of Error No. 2
Next, plaintiff contends that the trial court abused its discretion in its award of lost wages and future earning capacity. This assignment has merit.
The trial court awarded $12,811.00 for lost income, finding "that plaintiff lost wages from July 1986 until March of 1987 and some loss since that time." The trial court found no loss of future earning capacity, stating further "that any pain or loss of earnings after the April 1987 accident must be shared by that accident."
Plaintiff testified that she worked for Neil Corporation as a beauty supplies salesperson from December 1983 until March 1986, one month before the accident. At that time, she moved to the Beauty Company, where she continued to sell beauty supplies. In July 1986, plaintiff lost her job at the Beauty Company since she could not satisfactorily perform her duties as a result of the injuries sustained in the 1986 accident. Plaintiff was unemployed for eight months, during which time she collected unemployment compensation benefits. On March 9, 1987, one month prior to the second accident, plaintiff began new employment with Telecheck. Her employment with Telecheck also entailed sales, but did not require extensive travel.
Plaintiff's tax returns and other tax forms show her income as follows:

 Form 1040 W-2 and other Forms
1984 ......................$21,826.00 N/A
1985 ......................$23,969.34[1]
1986 ......................$10,910.00 $17,112.78 [Includes unearned income
 of $1,692.78 and unemployment
 compensation of $4,510.00]
1987 ......................$19,032.50
1988 ......................N/A $28,901.67.

We conclude that the award of $12,811.00 for lost wages is insufficient. In 1985, plaintiff's earned wages amounted to $23,969.34. Her wages diminished to $10,910.00 in 1986 and $19,032.50 in 1987, for a total loss of $17,995.84 from 1985 to 1987. Thus, the trial court should have awarded plaintiff $17,995.84 in lost wages.
In computing this amount, we note that the award for lost wages is not offset by the amount of unemployment compensation received. An injured plaintiff's tort recovery is not diminished because of insurance benefits received by the plaintiff from sources independent of the tortfeasor's contribution. Gilmore v. Russell, 555 So.2d 511, 518 (La.App. 4th Cir.1989), writ den. 559 So.2d 140, 142 (La.1990). Therefore, we amend the award for lost wages to $17,995.84.
*1260 The trial court found no loss of future earning capacity. We find no error in this ruling.
At the trial, plaintiff presented the testimony of Mike Miller, a sales consultant for a company called Arnold, Inc. Miller worked for Neil Corporation from 1975 to 1986. Miller testified that an average salary for a beauty supplies salesperson is approximately $36,000. However, Miller testified that he based his estimate on his own salary and on hearsay of what other salespersons earn.
Plaintiff also submitted into evidence a report from economist Seymore Goodman as to plaintiff's lost income and future loss of earnings. This report estimates a past loss of earnings of $39,165.66 and a future loss of earning capacity in the amount of $106,706.31. However, the report states that these findings are based on the $36,000 average salary as testified to by Miller. Because this figure was not substantiated by credible evidence, we cannot say that the trial court erred in not granting plaintiff an award for future earning capacity according to Goodman's report. We note also that the record shows that plaintiff's salary in 1988 actually increased nearly $5,000 over her salary in 1985. Further, while the record confirms that at the time of trial, plaintiff experienced discomfort with prolonged driving, the medical testimony indicated that her condition would improve. Therefore, we conclude that the trial court was not manifestly erroneous in finding no loss of future earning capacity.

Assignment of Error No. 3
Next, plaintiff contends that she is entitled to an award of penalties and attorney fees because Travelers was arbitrary and capricious in failing to tender an amount of damages to plaintiff upon satisfactory proof of loss. This assignment is without merit.
Prior to the 1989 amendment, LSA-R.S. 22:658 provided for penalties and attorney fees when an insurer failed to make payment to any insured within sixty days of proof of loss and demand, and when such failure was found to be arbitrary, capricious, or without probable cause. That provision was made applicable to uninsured motorist claims. Hart v. Allstate Insurance Co., 437 So.2d 823 (La.1983); McDill v. Utica Mutual Insurance Co., 475 So.2d 1085 (La.1985).
LSA-R.S. 22:658 is penal in nature and must be strictly construed. Hart v. Allstate Insurance Co., 437 So.2d at 827; Morgan v. American Fire & Indemnity Co., 506 So.2d 785, 788 (La. 1st Cir. 1987), writ den. 512 So.2d 458 (La. 1987). The burden of proof is on the claimant to show satisfactory proof of loss as a necessary predicate to showing that the insurer was arbitrary or capricious. Hart v. Allstate Insurance Co., 437 So.2d at 827-828; Webb v. Goodley, 512 So.2d 527, 531 (La. App. 3d Cir.1987).
To establish "satisfactory proof of loss" of an uninsured motorist claim, the insured must show that the insurer received sufficient facts to fully apprise it that 1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; 2) that he was at fault; 3) that such fault gave rise to damages; and 4) establish the extent of those damages. McDill v. Utica Mutual Insurance Co., 475 So.2d at 1089.
The record in the present case does not support plaintiff's claim that Travelers was arbitrary or capricious in failing to tender more than $10,000 in addition to the $5,000 it paid in medicals.
The parties stipulated that plaintiff settled with Landa and State Farm on September 6, 1988 for $500 less than State Farm's policy limits. The record shows that Travelers was provided with plaintiff's tax returns on July 21, 1988 and that Travelers made an unconditional tender of $10,000 on September 21, 1988, less than sixty days later. Moreover, plaintiff had returned to work at a salary which exceeded her pre-accident income. Additionally, the testimony of Mark A. Roark, senior supervisor for Travelers, shows that the decision to tender $10,000 was based in part on the deposition testimony of Dr. Elmorshidy, who had testified that plaintiff should recover *1261 physically in four to six months after March 1987.
Considering all of these facts, we cannot say that the trial court erred in failing to assess penalties and attorney fees against Travelers.

Assignment of Error No. 4
Finally, plaintiff contends that the trial court erred in failing to fix interest due on the award at twelve percent, the legal rate of interest due when suit was filed on April 6, 1987. Plaintiff argues that subsequent amendments to LSA-C.C. art. 2924, which provide fluctuating rates of legal interest, are substantive in nature and, therefore, neither retroactive nor applicable to the instant case. This assignment is without merit.
LSA-R.S. 13:4203 sets forth the general rule in Louisiana for calculating interest on judicial judgments. That statute reads:
Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto", which may be rendered by any of the courts.
The applicable rates of legal interest are provided in LSA-C.C. art. 2924. On April 6, 1987, the date of judicial demand in the instant case, Article 2924 provided in pertinent part:
The rate of judicial interest resulting from a lawsuit pending or filed during the indicated periods shall be as follows:... On and after September 11, 1981, the rate shall be twelve percent per annum.
On April 25, 1989, the date of the judgment in this case, Article 2924 had been amended to provide in pertinent part:
B.(1) Legal interest is fixed at the following rates, to wit:
(a) At the rate fixed in Subparagraph (3) of this Paragraph on all sums which are the object of a judicial demand, whence this is called judicial interest....
* * * * * *
(2) The rate of judicial interest resulting from a lawsuit pending or filed during the indicated periods shall be as follows:
(a) Prior to September 12, 1980, the rate shall be seven percent per annum.
(b) On and after September 12, 1980, until September 11, 1981, the rate shall be ten percent per annum.
(c) On and after September 11, 1981, until January 1, 1988, the rate shall be twelve percent per annum.
(3)(a) On and after January 1, 1988, the rate shall be equal to the rate as published annually, as set forth below, in the Louisiana Register by the commissioner on financial institutions.
In determining whether the amendment to Article 2924 is retroactive, a brief history of that article is helpful. Prior to the 1980 amendment, Article 2924 provided in pertinent part:
Interest is either legal or conventional. Legal interest is fixed at the following rates, to-wit:
At seven percent on all sums which are the object of a judicial demand. Whence this is called judicial interest.
Thus, legal interest at the rate of seven percent per annum attached from the date of judicial demand.
Thereafter, by Act 402 of 1980, this article was amended to provide for an escalating interest rate determined according to the dates on which suit was pending or filed. The escalating schedule has been retained in all amendments subsequent to 1980.
An examination of the amending acts reveals an intent by the legislature to give retroactive effect to the acts beginning in 1980, to provide for escalating interest rates applicable to suits filed or pending during the indicated periods in the various amendments. Auger v. Auger, 434 So.2d 492, 495 (La.App. 2d Cir.1983). See Silver v. Nelson, 610 F.Supp. 505, 526 (E.D.La. 1985).
Accordingly, the trial court did not err in failing to fix the interest rate on the judgment at twelve percent. Interest is due at legal interest until paid, pursuant to the escalating rates in LSA-C.C. art. 2924 as provided on the date of judgment, April 25, 1989.
*1262 For the foregoing reasons, the judgment of the trial court is affirmed as to the award for pain and suffering, loss of earning capacity, penalties and attorney fees and the interest rate due on the judgment. The judgment of the trial court is amended to provide for an award of lost wages in the amount of $17,995.84, and affirmed as amended.
AFFIRMED AS AMENDED.
NOTES
[1] As per Amended U.S. Individual Income Tax Return filed into evidence. The original return for 1985 shows earned income of $23,720.61. In awarding $12,811.00 lost wages, the trial court apparently subtracted the 1986 income of $10,910.00 from $23,721.00, the approximate income as shown on the pre-amended 1985 tax return.