916 So.2d 1149 (2005)
Jesse BALSEIRO, M.D.
v.
Wilfrido CASTANEDA-ZUNIGA, M.D., John Ruby, PH.D., Louisiana State University Medical Center New Orleans, Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College.
No. 2004-CA-2038.
Court of Appeal of Louisiana, Fourth Circuit.
August 17, 2005.
Rehearing Denied January 17, 2006.
*1150 Franklin D. Beahm, John R. Cook, IV, Beahm & Green, New Orleans, LA, for Plaintiff/Appellee.
Amy Groves Lowe, Kathleen Gendusa Trascher, Taylor, Porter, Brooks & Phillips, L.L.P., Baton Rouge, LA, for Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge MAX N. TOBIAS, JR.).
Judge PATRICIA RIVET MURRAY.
This is a suit for wrongful termination of an employment contract. From a judgment in favor of the plaintiff, Jesse Balseiro, M.D., awarding $278,295.60 in damages, the defendants appeal. Dr. Balseiro answers the appeal seeking additional relief. For the reasons that follow, we reverse.

FACTUAL AND PROCEDURAL BACKGROUND
In 1992, Dr. Balsiero was appointed to the faculty of the Louisiana State University Medical Center in New Orleans ("LSUMC") as an Associate Professor in the Radiology Department. His initial appointment was for a two-year term on the tenure track. His appointment commenced on September 28, 1992 and ended on September 27, 1994.
On August 31, 1994, the Radiology Department Promotions Committee met to consider Dr. Balseiro for tenure.[1] The committee voted unanimously against granting tenure. Dr. Castaneda-Zuniga, the Radiology Department Chairman, concurred in that decision.
On September 9, 1994, Dr. Castaneda-Zuniga wrote to Robert S. Daniels, M.D., the LSUMC Dean, informing him of the Committee's vote. He also informed Dr. Daniels that he had discussed with Dr. Balseiro the three options then available to LSUMC: (i) keep Dr. Balseiro on tenure track for an additional two years, (ii) change him to a non-tenure track, or (iii) terminate his employment.[2] Lastly, Dr. Castaneda-Zuniga informed Dr. Daniels that Dr. Balseiro was going to explore his options and contact him on September 19 to discuss this issue.
On September 22, 1994, Dr. Castaneda-Zuniga again met with Dr. Balseiro. On *1151 that date, Dr. Castaneda-Zuniga hand delivered a letter to Dr. Balseiro, which stated:
In accordance with University Guidelines, because you are on the tenured track it is time for your tenure review. Your curriculum vitae has been reviewed by the tenured faculty of the Department. Based on their recommendations, and my own evaluation of your file, I have decided that I will not request that you be granted tenure at this time. Therefore, I am proposing that your appointment be moved from the tenure track to a clinical appointment, whereby your contract will be annual. You will have no tenure rights while on this track.
This letter closed with a request that Dr. Balseiro, if he approved the change from tenure to non-tenure track, sign and date the attached statement[3] by September 23, 1994, as the issue needed to be resolved by September 26, 1994. On both September 22 and September 30, 1994, Dr. Balseiro refused to approve the change; he insisted that he remain on the tenure track.
On October 3, 1994, Dr. Castaneda-Zuniga, by letter, gave Dr. Balseiro notice of non-renewal; that letter stated:
In accordance with the By-Laws and Regulations of the Louisiana State University Board of Supervisors, Section 2-7, I am informing you that your appointment in the Department of Radiology will not be renewed. This non-renewal is effective October 5, 1995. Your last day of employment with the University will be October 4, 1995.
Dr. Balseiro's last day of employment at LSU was October 4, 1995.
On October 5, 1995, Dr. Balseiro commenced this action, captioned "Petition for Specific Performance, in the Alternative, for Damages for Breach of Contract and Tort." The named defendants in this action are Dr. Castaneda-Zuniga; John Ruby, Ph.D.;[4] LSUMC; and the Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College ("LSU"). The parties stipulated to the following facts:
1. On September 28, 1992, Jessie Balseiro, M.D. was appointed to the faculty of LSU Medical School of New Orleans as an Associate Professor with an initial two year appointment, on the tenure track.
2. Dr. Balseiro's annual faculty appointment date to the LSU Medical School of New Orleans is September 28, 1992.
3. At the time of Dr. Balseiro's severance from LSU faculty Dr. Balseiro's salary was $253,000.00 per year.
4. At the time of Dr. Balseiro's severance from LSU faculty, in addition to a salary of $253,000.00 he was receiving benefits which included: life insurance, health insurance, malpractice insurance, retirement benefits, forty days of leave with pay annually and short and long term disability.
5. Louisiana State University Medical Center Faculty Handbook is the controlling document for faculty appointment to, tenure of and separation from a faculty member of Louisiana State University Medical Center.

*1152 6. Tenured faculty members cannot be separated or terminated from the Louisiana State University Medical Center Faculty except as outlined in the faculty handbook.
7. A tenured faculty member cannot be removed from the faculty of LSU Medical Center except by a voluntary resignation or for cause, and the latter only after the exhaustion of due process rights provided under the faculty handbook.
8. Plaintiff [Dr. Balseiro] was notified in June 1992 that he had been appointed as an Associate Professor in the Department of Radiology of the LSU Medical Center.
9. Plaintiff's [Dr. Balseiro's] initial appointment in 1992 was for a two (2) year term and became effective on September 28, 1992.
10. The LSU Faculty Handbook and LSU Bylaws are the controlling documents for faculty appointments, tenures, separations, and all aspects of faculty members' association with LSU.
Although Dr. Balseiro alleged in his petition that his appointment was as an "Associate Professor" and that this is a "tenured" (indefinite) appointment, he alternatively alleged that his appointment was a "term" appointment and that he was wrongfully terminated from this term appointment.
Dr. Balseiro's argument regarding the alleged wrongful termination of his term appointment, which (as discussed below) the trial court accepted, is outlined in his petition as follows:
 Dr. Balseiro's first annual (12 months) term appointment began on September 28, 1992, see Handbook paragraph 2.2.1.
 As of September 27, 1994, Dr. Balseiro served two or more years of employment and automatically began to serve his third year annual term appointment.
 Under Paragraph 2.2.5, an employee that is not to be reappointed, who has served two or more years of service, must receive at least twelve (12) months notice of non-renewal before the expiration of his appointment.
 Faculty members at Dr. Balseiro's level [(Associate Professor)] receive an automatic renewal of their employment for an annual term (12 months), after the passage of the annual reappointment date, and any notice of non-renewal will not be effective until the passage of the then current term and the next sequential annual term.
 Dr. Balseiro was not notified that his appointment would not be renewed until correspondence dated October 3, 1994.
 Pursuant to the Employment Agreement, and Faculty Handbook, said notice was not timely within the appointment term, and therefore, Dr. Balseiro is entitled to retain his appointment through September 27, 1996, which encompasses the expiration of the annual term from September 28, 1995 through September 27, 1996, because the notice was not timely to terminate Dr. Balseiro's appointment on September 27, 1995.
Following a two-day bench trial, the trial court rendered judgment in Dr. Balseiro's favor on the wrongful termination claim. In its reasons for judgment, the trial court noted the controlling contract between LSU and its faculty members is the Faculty Handbook. Outlining the pertinent Handbook provisions, the trial court stated:
Section 2.7.1.1.3 of the Faculty Handbook provides in pertinent part that an associate professor on the tenure tract shall be appointed for an annual term. Section 2.2.2 of the Faculty Handbook *1153 provides in pertinent part that an appointment may only be terminated for cause. Section 2.2.5 provides in pertinent part that when an employee is not to be reappointed, written notice is to be provided. Further, for an employee with two or more years of service the written notice must be given at least twelve (12) months prior to the expiration of a current appointed term. Section 2.7.2 provides that newly hired associate professors are considered to be on probationary status if the position is on the tenure tract. It also provides that decisions on tenure may be made at any time during probationary status, but if a decision is not made prior to the beginning of the fourth year, tenure is automatically conferred.
Applying those provisions to the facts, the trial court concluded that Dr. Balseiro's appointment under Section 2.7.2 was probationary and that the October 3, 1994 non-renewal letter served as an effective notice under that section that tenure would not be conferred upon Dr. Balseiro. The trial court, however, accepted Dr. Balseiro's argument that he was wrongfully terminated, reasoning:
Once Dr. Balseiro started his third year appointment on September 28, 1994, he was entitled to complete his third year appointment and commenced his fourth year appointment. Once his fourth annual appointment started on September 28, 1995, he had to either voluntarily resign or be terminated for cause. As Dr. Balseiro neither voluntarily resigned nor was terminated with cause,[5] he was entitled to finish his fourth year appointment which was through September 27, 1996. The Court finds that had Dr. Balseiro been given written notice prior to September 27, 1994 that his appointment was not going to be renewed, then his separation from LSUMC on October 4, 1995 would have been in conformity with the Handbook.
The trial court thus rendered judgment in favor of Dr. Balsiero in the amount of $278,295.60 (salary of $21,083.00 per month for eleven months, totaling $231,913.00, and benefits for eleven months, totaling $46,382.60), plus judicial interest from the date of the demand and all costs. This appeal followed.

DISCUSSION
At the outset, we find, contrary to the parties' contentions, the applicable standard of review is not manifest error, but de novo because this case involves an error of law. See Rosell v. ESCO, 549 So.2d 840, 844 n. 2 (La.1989)(citing Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975)). The legal error pertains to the governing provisions of the Handbook. The trial court, accepting Dr. Balseiro's argument, relied on provisions of the Handbook that apply to "Associates" to find Dr. Balseiro, who was an "Associate Professor," was on an annual term appointment and entitled to automatic renewal of his annual appointment. Particularly, the trial court accepted Dr. Balseiro's argument that he had an "annual appointment" that automatically renewed each September 27th that passed without timely written notice of termination *1154 and that any subsequent notice of non-renewal would not be effective until the passage of the current annual term and the next sequential annual term.
The Handbook provisions Dr. Balseiro cites regarding "annual term" appointments and automatic renewal of such appointment each annual reappointment date apply to "Instructors or Associates." Particularly, Section 2.2.1 of Handbook, which Dr. Balseiro cites in the petition, provides:
Term employees are appointed for specified periods of time as indicated on the appointment form.
Those who rank as an Instructor or Associate shall be on an annual appointment. (Emphasis supplied).
Similarly, Section 2.7.1.1.3 of the Handbook, which the trial court cites in its reasons for judgment, provides the tenure policy for "Instructors or Associates;" it reads: "[t]hose who rank as Instructor or Associate shall be on an annual appointment." These provisions are inapposite in this case, however, as Dr. Balseiro was not an "Associate;"[6] rather, he was an "Associate Professor." We also note, as defendants emphasize, that there is no provision in the Handbook or Bylaws providing for an automatic reappointment of an Associate Professor.
Section 2.1.1.3 of the Handbook provides the following regarding the tenure and appointment of an "Associate Professor;" to-wit:
Initial appointments of Associate Professors who join the campus at that rank and their subsequent reappointments may be made for a specified term through not more than four (4) years of total service on that campus. Persons promoted to the rank of Associate Professor after less than four years of service on the campus may be continued to term appointment no more than the fourth year. Individuals paid from grant or contract funds do not acquire tenure through the passage of time but may become tenured only by specific individual recommendation through appropriate channels and approval by the President. With the exceptions noted above, Associate Professors are tenured and are appointed for an indefinite period of time.[7]
Dr. Balseiro's initial two-year appointment falls within the above exception and is thus not a tenured, but rather a term appointment. Section 2.2.1 of the Handbook, quoted above, provides that "[t]erm employees are appointed for specified periods of time as indicated on the appointment form." Dr. Balseiro's initial appointment was indicated to be a two-year term appointment.
The principal provision of the Handbook applicable here is Section 2.7.2, which provides:
In general, newly hired Associate Professors and Professors are considered to be on probationary status if the position is tenure track. The initial appointment on probationary status may be for one, two, three or four years. The probationary status provides individuals the opportunity to demonstrate their ability and also gives the University time to observe and evaluate them on the basis of their performance in a faculty position. Faculty members holding probationary appointments are evaluated for *1155 reappointment or non-reappointment by the Department Head.
A decision to recommend tenure for the faculty member on probationary status can be made any time during the probationary period but must be made prior to the beginning of the fourth year on probationary status, otherwise tenure is automatically conferred. Non-reappointment of a faculty member on probationary status follows the guidelines in Section 2-7 of the LSU System By-Laws and Regulations.
We find the trial court correctly characterized Dr. Balseiro's position as one of "probationary status" under Section 2.7.2. We further find the trial court correctly found the October 3, 1994 notice of non-renewal sufficient to inform Dr. Balseiro of the unfavorable tenure decision, which was timely made before the beginning of Dr. Balseiro's fourth year on probationary status. For this reason, we find Dr. Balseiro's argument regarding tenure by default unpersuasive.[8]
The narrow issue before us is whether the notice of non-renewal was sufficient and timely to terminate Dr. Balseiro's employment effective October 4, 1995. Phrased differently, the issue is whether the trial court erred in awarding wrongful termination damages in the amount of eleven months of salary and benefits based on its finding that proper notice was not given and termination was thus premature.
Defendants contend that Dr. Balseiro had only two terms of appointment: (i) an initial two year probationary status tenure appointment from September 28, 1992 to September 27, 1994; and (ii) a one-year clinical, non-tenure appointment from October 5, 1994 to October 4, 1995. Defendants argue the notice of termination was valid because it gave Dr. Balseiro twelve months notice. Defendants further argue that before September 27, 1994, Dr. Balseiro had less than two years of service at LSU and would have been entitled to only six months notice under Section 2-7 of the Bylaws and Section 2.2.5 of the Handbook. Defendants still further argue that the trial court's holding, and Dr. Balseiro's position, confuses the anniversary date of Dr. Balseiro's hire with the twelve months notice of non-renewal and erroneously requires LSU to give twelve months notice of non-renewal plus eleven additional months to finish his fourth year.
Dr. Balseiro counters that the trial court correctly found the notice of non-renewal was not valid. Dr. Balseiro argues that LSU's failure to give notice before September 27, 1994, the automatic commencement of his third "annual term" appointment, meant that he was entitled to finish that third year annual term as well as to begin and to finish the next sequential (the fourth year) annual term. However, Dr. Balseiro's argument, which the trial court accepted, is premised on the legal error, discussed above, that Dr. Balseiro was entitled to an "annual term" appointment under the Handbook as an "Associate." Such is not the case. As an "Associate Professor" on probationary status, Dr. Balseiro had a term appointment not an annual appointment.
Given that Dr. Balseiro's appointment was as an "Associate Professor" on probationary status, the governing provision regarding termination of his appointment is Section 2.7.2. Section 2.7.2, quoted above, incorporates by reference Section 2-7 of the Bylaws,[9] which provides:

*1156 Expiration of Appointment. Upon expiration of a term appointment, the employee is a free agent to whom the University System has no obligation. The University System may reappoint the employee to the same or a different position. Non-reappointment carries no implication whatsoever as to the quality of the employee's work, conduct, or professional competence.
When an employee, other than an Associate, is not to be reappointed, written notice to the employee will ordinarily be provided in accordance with the following schedule:
1. Not later than March 1 of the first academic year of service, if the appointment expires at the end of that year; or, if an initial one-year appointment terminates during the academic year, at least three months in advance of its termination.
2. Not later than December 15 of the second academic year of service, if the appointment expires at the end of that year; or if an initial two-year appointment terminates during the academic year, at least six months in advance of its termination.
3. At least 12 months before the expiration of an appointment after two or more years service on that campus.
4. When an Associate is not reappointed, the Associate shall be given written notice of termination no less than ninety (90) days prior to the expiration of the employment contract.
Defendants do not dispute that Dr. Balseiro was entitled to twelve months notice of termination under the above provision. Defendants, however, contend that the October 4, 1994 notice of non-renewal was sufficient to satisfy this provision. We agree. By giving Dr. Balseiro notice on October 3, 1994, and extending the term of employment an additional twelve months until October 4, 1995, LSU satisfied the notice requirement. In finding to the contrary and awarding damages for wrongful termination, the trial court erred.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed.
REVERSED.
ARMSTRONG, C.J., concurs in the result.
ARMSTRONG, C.J., concurring.
I concur in the result reached in the majority opinion.
NOTES
[1] The Radiology Department Promotions Committee is a tenured faculty committee. At that time, the Committee was composed of Drs. Martha Jane Clayton, Erich Lang, and Hugh Robertson.
[2] A June 14, 1994 memorandum written by Karen Campbell, University Administrative Specialist, and addressed to Melissa Davis, Business Manager of the Department of Radiology, set forth a similar outline of the options available to LSUMC in regard to Dr. Balseiro's upcoming tenure review date; to-wit:

1) to extend for 1 more year (his current appointment expires on 09/27/94);
2) tenure or promote him;
3) terminate and give notice now (1 year's notice required) or;
4) change to a non-tenure tract position.
The memorandum further notes that "[i]f no action is taken before 09/27/95, he will be tenured by default (this is not something we want to do). Once an Associate Professor begins his fourth year, he is tenured." As discussed elsewhere, we find Dr. Balseiro's argument that he was tenured by default unpersuasive.
[3] The statement that was attached to the letter read: "I agree that my appointment be changed from tenure track, to clinical track, effective September 26, 1994. I realize that I will have no tenure rights."
[4] Dr. Ruby was the Associate Dean for Faculty Affairs and Admissions.
[5] The trial court expressly found Dr. Balseiro was not terminated for cause, noting:

The Court concludes from the testimony of Dr. Wilfrido Castaneda-Zuniga that LSU was satisfied with Dr. Balseiro's work in the Radiology Department. [Dr.] Balseiro served as acting Chairman of the department, and Vice Chairman of the department during his appointment as Associate Professor with LSU Medical Center. Dr. Castaneda-Zuniga testified that he recommended Dr. Balseiro for other Chairman positions at other universities. The Court finds this testimony in direct contravention with a termination for cause.
[6] Section 2.1.3.1 of the LSU Faculty Handbook provides that "Associates do not earn tenure and are appointed for a specified term."
[7] Similar language appears in Sections 2.2.2 and 2.6.1 of the Handbook.
[8] Given our finding that Dr. Balseiro was timely considered and denied tenure before the commencement of the fourth year on probationary status, we find the issue of the timing of Dr. Balseiro's movement from the tenure tract to the non-tenure tract is a non-issue.
[9] Language similar to Section 2-7 appears in Section 2.2.5 of the Handbook.