955 So.2d 700 (2007)
Stefanie TREMBLAY, Wife of/and Ronnie Tremblay, Sr., Individually, and on Behalf of their Minor Child, Ronnie Tremblay, Jr. and Linda Authement, Wife of/and Jay Authement, Individually, and on Behalf of their Minor Child, Jaylin Authement
v.
ALLSTATE INSURANCE COMPANY and Shelley Becker Bock.
No. 2005-CA-0956.
Court of Appeal of Louisiana, Fourth Circuit.
March 21, 2007.
*701 David E. Caruso, Jr., Sidney D. Torres, III, Law Offices of Sidney D. Torres, III, APLC, Slidell, LA, for Plaintiff/Appellee.
James A. Stapp, Law Offices of Harold G. Toscano, New Orleans, LA, for Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge, DENNIS R. BAGNERIS SR., Judge LEON A. CANNIZZARO JR., and Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
Allstate Insurance Company appeals the decision of the district court awarding Appellees, Stefanie Tremblay, $42,715.00 in damages, her minor child, Ronnie Tremblay Jr., $4,140.00 in damages and Jaylin Authement $40,305.00 in damages.[1] We affirm.
FACTS
On November 4, 2001, Stefanie Tremblay, Jaylin Authement and Ronnie Tremblay, Jr. were traveling in an automobile operated by Mrs. Tremblay when her automobile collided with Shelly Bock's automobile. Mrs. Tremblay was traveling southbound on Paris Road, and Ms. Bock was traveling down a side street approaching Paris Road. Ms. Bock proceeded through a stop sign, crossed two lanes of traffic on Paris Road, and struck Mrs. Tremblay's vehicle.[2] None of the individuals involved in the accident required emergency care as a result.
PROCEDURAL HISTORY
After a trial on March 9, 2005, the district court awarded the Appellees damages as follows: Stefanie Tremblay $40,000.00 for general damages and $2,715.00 for special damages; Stefanie Tremblay and Ronnie Tremblay, Sr., on behalf of their minor child, Ronnie Tremblay, Jr., $4,000.00 for general damages and $140.00 for special damages; and Linda Authement and Jay Authement, on behalf of their minor child Jaylin Authement, $37,000.00 in general damages and $3,305.00 in special damages. It is from this judgment that Allstate appeals.

Assignments of Error
Allstate offers the following five assignments of error: (1) the trial court erred in *702 failing to find any fault on the part of Stephanie Tremblay because the evidence shows that Mrs. Bock had pre-empted the intersection when she was struck by Mrs. Tremblay's vehicle; (2) the trial court erred in awarding $4,000.00 for pain and suffering for Ronnie Tremblay, Jr. because there was insufficient evidence at trial to support such an award; (3) the trial court abused its discretion in awarding $40,000.00 to Stefanie Tremblay for general damages; (4) the trial court abused its discretion in awarding $37,000.00 to Jaylin Authement; and (5) the trial court erred in awarding $1,590.00 for medical bills from Dr. Salvador Murra and Crescent City MRI for treatment rendered to Jaylin Authement because there was insufficient evidence that those bills were incurred as a result of the November 2001 accident.

Standard of Review
Appellate courts review factual findings under the "manifest error" or "clearly wrong" standard. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The Louisiana Supreme Court has developed a two-part test for reviewing a factfinder's determinations. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). This bifurcated test states that, to disturb the findings of a trial court: 1) the reviewing court must conclude that the trial court's findings have no reasonable factual basis, and 2) the reviewing court must determine that the record evidences that the findings are clearly wrong or manifestly erroneous. Mart, 505 So.2d at 1127. Thus, the reviewing court must view the record in its totality to determine whether the factfinder was clearly wrong. Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). This rationale stems from the fact that the trial court has a "better capacity to evaluate live witnesses." Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). However, an appellate court may not substitute its judgment for that of the factfinder, because "where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Stobart, 617 So.2d at 883. The majority of the issues presented in this case are factual questions and will be reviewed using the above standard.
Conversely, errors of law are reviewed de novo by the appellate courts. Norfleet v. Lifeguard Transp. Service, Inc., XXXX-XXXX (La.App. 4 Cir. 5/17/06); 934 So.2d 846; Balseiro v. Castaneda-Zuniga, 04-2038, p. 6 (La.App. 4 Cir. 8/17/05); 916 So.2d 1149, 1153.

Assignment of Error # 1
Allstate maintains that the accident was at least partially caused by Mrs. Tremblay because Ms. Bock had nearly crossed the lane of travel in the intersection prior to striking Mrs. Tremblay's vehicle. Accordingly, Allstate argues, this demonstrates that Ms. Bock pre-empted the intersection. Allstate relies on Tillman v. Massey, 445 So.2d 749, 752 (La. App. 4 Cir. 1/12/84) wherein this Court concluded that "[t]he doctrine of pre-emption has a two-fold effect; it frees the preempting party of negligence and it imposes negligence on the party against whom it is claimed." Thus, Allstate argues that Ms. Bock stopped at the stop sign, determined that it was safe to cross, and then proceeded, subsequently causing damage to the passenger-side bumper of Mrs. Tremblay's automobile.
We find that Allstate erroneously relies on Tillman in this case, because this Court also concluded in Tillman that "[i]n order for the doctrine of pre-emption to apply to a motorist who has entered the intersection before the traversing vehicle, the one seeking to invoke this doctrine must show that he entered the intersection at a proper speed and sufficiently in advance *703 of the vehicle on the intersecting street to permit him to cross without requiring an emergency stop by the other vehicle." Id. (emphasis added).
Likewise, LSA-R.S. 32:123(B) provides that:
Except when directed to proceed by a police officer or traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the cross walk on the near side at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard. (emphasis added).
Ms. Bock's own testimony does not support the argument that she pre-empted the intersection. First, Ms. Bock testified that she was not certain whether or not she came to a complete stop before entering the lanes of traffic on Paris Road. Next, Ms. Bock testified that she did come to a complete stop before crossing over the median.[3] Specifically, Ms. Bock testified that she crossed the first two lanes of traffic, stopped, and then looked to see whether she could observe any oncoming traffic in the last two lanes of traffic before proceeding. Ms. Bock further testified that she did not know of any reason why she did not observe Mrs. Tremblay's vehicle in oncoming traffic before crossing the roadway.[4]
Pursuant to LSA-R.S. 32:123(B), however, Ms. Bock had a duty to yield, whether or not she actually stopped at the stop sign or the median, to allow Mrs. Tremblay to clear the roadway before proceeding. Additionally, the record does not support the assertion that Ms. Bock pre-empted the intersection. Therefore, we agree with the trial court's finding that only Ms. Bock was at fault with regard to the accident, and find that this assignment of error is without merit.

Assignment of Error # 2
Allstate urges that the record lacks evidence showing that Ronnie Tremblay, Jr. suffered $4,000.00 of pain and suffering. Allstate maintains that while Ronnie, Jr. was treated on three occasions by James Shoemaker, D.C., he did not exhibit pain and suffering for any longer than four days after the accident.[5] Moreover, Allstate argues that Appellees were only seeking an award between $2,000.00 and $3,500.00 in general damages. Conversely, Appellees argue that the award of $4,000.00 for pain and suffering of the two-year-old was sufficient because the testimony of Dr. Shoemaker regarding Ronnie Jr's injuries, coupled with the testimony of his mother, Mrs. Tremblay, support the factfinder's award.
*704 In a Joint Trial Order filed in the district court on June 15, 2004, the Appellees cited Krepps v. Hindelang, 97-980 (La.App. 5 Cir. 4/15/98), 713 So.2d 519, 525, wherein the court increased a general damages award from zero to $2,500.00 for a three-month old with a soft tissue injury to the neck, in support of their request for an award between $2,000.00 and $3,500.00 in general damages for Ronnie Tremblay's similar injuries. Additionally, the record contains testimony from Ronnie Jr.'s treating physician, Dr. Shoemaker regarding his injuries. Dr. Shoemaker testified that Ronnie Jr.'s mother indicated that after the accident, the child was agitated, vomiting, and pointing to his neck, and that upon examination, Dr. Shoemaker observed tenderness and sensitivity in his neck and a ten percent reduction in cervical mobility, in addition to noting that the paravertebral and trapezius muscles[6] were tender and taut.
The Louisiana Supreme Court has stated that "[t]he standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). The Court further noted, however, that "the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck [v. Stevens, 373 So.2d 498 (La.1979)] to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages." Youn, 623 So.2d at 1261. Thus, although "[r]easonable persons frequently disagree about the measure of general damages in a particular case," it has been consistently held that "[i]t is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." Id.
In this case, the record reveals that Ronnie, Jr. suffered injuries sufficient to justify the court's $4,000.00 award, and we do not agree that the trial court abused its vast discretion. Therefore, we find that this assignment of error is without merit.

Assignment of Error # 3
In its third assignment of error, Allstate argues that an award of general damages of $40,000.00 to Stefanie Tremblay is excessive. We disagree.
Mrs. Tremblay was diagnosed with cervical and thoracic injuries[7] and was treated by Dr. James Shoemaker for those injuries from November 5, 2001 until February 3, 2003.[8] Dr. Shoemaker's deposition testimony and medical report indicate *705 that Mrs. Tremblay complained of headaches, finger numbness, stiffness, lack of mobility, back and shoulder pain, and muscle spasms throughout the course of her treatment. Dr. Shoemaker also testified that the cervical and thoracic injuries suffered by Mrs. Tremblay were a result of the November 2001 accident, even though Mrs. Tremblay had been in a previous car accident and had pre-existing lower back complaints.[9]
Additionally, although Dr. Shoemaker testified that he suggested Mrs. Tremblay should receive treatments for her injuries once a week or more, Mrs. Tremblay testified that she was able to receive treatment from Dr. Shoemaker only once every two weeks, and then only once or twice per month. In total, Mrs. Tremblay was treated by Dr. Shoemaker on twenty-one occasions over a fifteen-month period for the injuries resulting from the November 2001 accident, with occasional gaps in treatment.[10]
In Sciambra v. Jerome Imports, Inc., XXXX-XXXX (La.App. 4 Cir. 12/14/05), 921 So.2d 145, 153 this Court concluded that:
[a]lthough Dr. Altman testified to his regular treatment plan, consisting of physical therapy three times a week for the first two weeks of treatment and twice a week thereafter, it is uncontroverted that the plaintiff attended only two therapy appointments. Since there was no evidence that financial or other considerations prevented the plaintiff from complying with this schedule, the jury reasonably could infer that he was not in such pain that he was moved to cooperate in the prescribed therapy protocol. The jury also heard and viewed evidence that the plaintiff failed to attend nine of his twenty-three scheduled appointments with Dr. Seltzer. The implication again is reasonable that his pain was not so severe as to cause him to cooperate with the treatment plans of his treating physicians. From the evidence adduced at trial, we cannot say that a reasonable jury could not have concluded that $26,000 was reasonable compensation for the plaintiff's past and present physical pain.
However, in Friedmann v. Landa, 573 So.2d 1255, 1259 (La.App. 4 Cir.1991), this Court concluded that a $35,000.00 award for pain and suffering was not an abuse of discretion when the plaintiff underwent treatment for approximately one year for similar injuries.[11]
In this case, we cannot conclude that the district court abused its discretion by awarding $40,000.00 to Mrs. Tremblay for her injuries. In the parties' Joint Trial Order, included in the Appellees' quantum citations for Mrs. Tremblay and Jaylin Authement was the statement that the range of general damage awards for each "would fall between $15,000 and $35,000." Additionally, the fact that Mrs. Tremblay *706 missed some of her appointments with Dr. Shoemaker is not relevant to the issue of Mrs. Tremblay's damages; the facts of this case are inapposite to those in Sciambra, supra. Therefore, we find that this assignment of error is without merit.

Assignment of Error # 4
Allstate argues that the district court abused its discretion in rendering an award of $37,000.00 for general damages to Jaylin Authement, the minor child of Jay and Linda Authement. Additionally, Allstate alleges that the testimony of Dr. Shoemaker reveals that Jaylin's sporadic complaints demonstrate uncertainty on her part as to her injuries. Finally, Allstate argues in the alternative that Jaylin failed to mitigate her damages by not taking full advantage of the services provided by Dr. Shoemaker.
A review of the record reveals that testimony from Jaylin and Linda Authement and from Dr. Shoemaker support the award in accordance with Friedmann v. Landa, 573 So.2d 1255, 1259 (La.App. 4 Cir.1991), supra. Dr. Shoemaker testified that he treated Jaylin from November 5, 2001 to March 14, 2003, and that Jaylin's injuries for which she sought treatment during that time frame were a result of the November 2001 accident.[12] Dr. Shoemaker further testified that Jaylin suffered from tightness and pain in the cervical thoracic area, muscle spasms, minor reduction of mobility in the neck and lower back area, loss of cervical curve, and intermittent numbness and tightness in her left arm, leg, and fingers throughout the course of her treatment.
Likewise, Jaylin testified at trial that she hurt her arm, neck and back in the collision, and that she was unable to participate in her modern dance classes for two or three years, something she had enjoyed since she was a small child. Additionally, Jaylin testified that she was not permitted to participate in the physical education at school for a few months, and that her injuries interfered with other everyday activities such as carrying a book bag to and from school. Similarly, Linda Authement testified at trial that Jaylin suffered from numbness in her arm and hand, neck, back, and arm pain, and that Jaylin was not able to attend her dancing school classes after the accident.
An award for damages must be reviewed in a light most favorable to the party who prevailed at trial. Harvey v. State, Dept. of Transportation and Development, XXXX-XXXX, p. 10 (La.App. 4 Cir. 9/26/01), 799 So.2d 569, 576, writ denied, XXXX-XXXX (La.3/15/02), 811 So.2d 910. An appellate court may not overturn an award for damages unless it is so out of proportion to the injury complained of that it shocks the conscience. Id. at p. 11, 799 So.2d at 577. Finally, we note again the well-established principle that the factfinder has vast discretion in determining a general damages award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993); Moore v. Kenilworth/Kailas Properties, XXXX-XXXX (La.App. 4 Cir.2004), 865 So.2d 884, 890.
We find that there is ample evidence in the record which reveals that the $37,000.00 award was not out of proportion to Jaylin's injuries. Therefore, because we do not believe the trial court abused its discretion, we find that this assignment of error lacks merit and decline to disturb the award of $37,000.00 in general damages to Jaylin Authement.

*707 Assignment of Error # 5
Finally, Allstate argues that Jaylin had an MRI performed by Dr. Salvador Murra at a cost of $1,590.00, which Allstate maintains was not related to Dr. Shoemaker's diagnosis or injuries as a result of the accident. We disagree.
Dr. Shoemaker testified in his deposition that he spoke with Jaylin's mother regarding a referral to Dr. Murra for an evaluation of her symptoms, and that he then reviewed the MRI studies that were conducted by Dr. Murra.[13] Thus, the record demonstrates that Dr. Murra performed an MRI that was consented to and subsequently evaluated by Dr. Shoemaker. Nevertheless, Allstate argues that because the MRI showed no serious injury, it was an unnecessary expense. Allstate further alleges that since the findings of the MRI were not affirmatively related to the accident that the bill for the MRI is unwarranted.
We find that the record supports the district court's award to Jaylin for the medical expense associated with the MRI. Accordingly, this assignment of error lacks merit.

Decree
For the foregoing reasons, we affirm the finding of fault by the district court as to Ms. Bock. We further affirm the award for general damages as to Ronnie Tremblay, Jr., Stefanie Tremblay and Jaylin Authement. Finally, we affirm the award of medical expenses incurred as a result of an MRI by Jaylin Authement.
AFFIRMED.
BAGNERIS J., concurs in part and dissents in part.
BAGNERIS J., concurs in part and dissents in part.
In most aspects, I respectfully concur with the majority opinion however, I think that the award for Ronnie Tremblay was an abuse of discretion by the district court and respectfully dissent.
The record contains testimony from Ronnie Jr.'s treating physician, Dr. Shoemaker, and from his family members. His medical bills were only $140. Dr. Shoemaker testified that "I saw him (Ronnie Jr.) a couple of days after the initial exam. Everything appeared to be good. There were no major complaints offered by the mother at that time. We did a little treatment with him. And then January 11th, a couple of months later, we did a final evaluation and he was released."
The district court erred in awarding Ronnie Jr. $4000 when the evidence fails to support that Ronnie Jr.'s injuries warrant that much. I rely on our cohorts from the Second Circuit and find that George v. Allstate Insurance Co., 32,899 (La.App. 2d Cir. 4/5/00); 758 So.2d 373, is parallel to the case at bar. In George v. Allstate Insurance Co. Jessica George, a ten-year-old girl, was diagnosed with minor neck and back injuries. She was treated by Dr. Spires on three occasions, did not seek further medical treatment for these injuries after her release by Dr. Spires and did not complain of pain at the time of trial. Id. at 378.
The record reveals that Ronnie, Jr. may have suffered some minor injury as well as periodic crying. I am of the opinion that an award of $500 is a sufficient amount of damages for the two-year-old.
NOTES
[1] The actual award was given to Linda Authement and Jay Authement on behalf of their minor child, Jaylin Authement, who was fourteen years old at the time of the accident.
[2] Paris Road is four lanes wide, with two lanes going each direction.
[3] We also note that Ms. Bock testified that at the time of the accident, the weather was clear and sunny; that the streets were dry; and that there were no obstructions to her visibility.
[4] Mrs. Tremblay's testimony also fails to support Allstate's argument that Ms. Bock pre-empted the intersection. Mrs. Tremblay testified, contrary to Ms. Bock's recollection, that she observed Ms. Bock proceed directly through the first two lanes and the median of Paris Road without stopping at all. Mrs. Tremblay further testified that when she saw Ms. Bock enter her path, that she attempted to brake and avoid the collision.
[5] Ronnie Tremblay, Jr.'s medical bills totaled $140.00.
[6] Paravertebral muscles are muscles located along the vertebra or in the vertebral column; trapezius muscles cover the upper and back portions of the shoulders and neck and primarily control movement of the shoulder blades.
[7] Dr. Shoemaker testified that Mrs. Tremblay suffered, among other injuries, a decreased cervical range of motion of approximately 40 percent; a loss of mobility in her left shoulder of approximately 30 percent; a bruise on the left upper arm; muscle spasms in her lumbosacral, thoracic and cervical regions; "cervical hypolordosis," which "means normally the cervical spine . . . should curve forward toward the jaw within certain ranges, and this was less than expected"; and "rotational malposition at the C3 through T8 spinal levels."
[8] Mrs. Tremblay returned to Dr. Shoemaker for treatment after being involved in another accident on October 4, 2004.
[9] Mrs. Tremblay was involved in an accident in March 2001; treated for neck and back injuries with a different chiropractor on three occasions; and testified that at the time of the November 2001 accident, she had recovered completely from her March 2001 injuries.
[10] Mrs. Tremblay testified that she underwent umbilical hernia surgery during the summer of 2002; the hernia was caused by a pregnancy in 1999. During her recovery from the hernia surgery, Mrs. Tremblay did not seek treatment from Dr. Shoemaker. Additionally, Mrs. Tremblay testified that she missed treatment for a few weeks on another occasion when she had to travel out of town.
[11] After being involved in an automobile accident, the plaintiff in Friedmann suffered neck and back pain; tenderness and muscle spasms in the neck and shoulder area; tenderness; limited range of motion in the neck and spine; and underwent extensive physical therapy and received steroid injections.
[12] Dr. Shoemaker testified that Jaylin was initially released from treatment on January 11, 2002, and then again on September 6, 2002, but returned on both occasions with symptoms and loss of mobility until her last visit on March 14, 2003.
[13] Dr. Murra did not testify at trial.